1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9  Rita Tapia, wife, and Federico Tapia, husband, )        CV 23-00465-TUC-JCH (MAA)
                                                )
10            Plaintiffs,                        )        **REPORT AND**
   v.                                            )        **RECOMMENDATION**
11                                               )
   Costco Wholesale Corporation, et al.,         )
12                                               )
             Defendants.                         )
13  _____ )

14

15        Pending before the court is a motion for summary judgment filed by the remaining

16  defendant, Costco Wholesale Corporation ("Costco"), on October 22, 2024.  Doc. 37.

17        Also pending is the plaintiffs' cross-motion for summary judgment, which was combined

18  with their response to Costco's motion and filed on December 5, 2024.  Doc. 41.

19        Costco filed a reply and response on January 17, 2025.  Doc. 46.  The plaintiffs filed a

20  reply on January 23, 2025.  Doc. 48.

21        The case has been referred to Magistrate Judge Ambri for report and recommendation

22  pursuant to the Local Rules of Practice.  LRCiv 72.1;  Doc. 11.  A hearing on the motion was

23  held on April 3, 2025.  Doc. 51.

24        Costco is entitled to summary judgment on the plaintiffs' general negligence claim.

25  There remains a genuine issue of material fact as to whether Costco is negligent per se for

26  violating Section 1003.4 of the International Building Code and whether Rita Tapia's Total

27  Knee Arthroplasty was caused by her fall.

28

Background

Costco operates a membership-only wholesale warehouse in Tucson, AZ. Complaint, Doc. 1-4, p. 2. The plaintiffs are paying members and were on the premises shopping on November 12, 2021. *Id*.

After they had completed their shopping, the plaintiffs were leaving the store "using a dedicated pedestrian walkway. . . ." *Id*. Plaintiff Rita Tapia ("Tapia") slipped and fell injuring her shoulder and leg.

The Complaint alleges that Tapia "slipped on a puddle of water in front of the self-service ice machine, fell to the floor," and suffered injury. Doc. 1-4, p. 3.

Costco maintains that "[P]laintiff did not fall adjacent to the ice machine or as a result of water leaking from the ice machine but rather she fell on ice that came from another customer's bag as he was walking towards the cash registers." Doc. 46, p. 7, n. 1 (citing Doc. 38, at ¶¶ 6-7). It asserts that the ice spill was caused by this Costco customer approximately 19 seconds before Tapia fell. Doc. 37, p. 4.

The plaintiffs maintain that "[w]ater was also present on the floor." Plaintiffs' Response to Defendants' Separate Statement of Facts, Doc. 43, ¶ 5. They present no evidence as to the location of the fall with respect to the ice machine. Plaintiffs' Statement of Facts, Doc. 42. They concede that some ice was spilled by a certain customer captured on video camera, but they dispute whether this ice caused the fall. Doc. 43, ¶¶ 5-7.

Tapia suffered a lower leg fracture, complains of left shoulder pain and peroneal tendonitis, and underwent a Total Knee Arthroplasty. Defendant's Statement of Facts, Doc. 38, p. 2.

Tapia's orthopaedic surgeon had recommended and scheduled a Total Knee Arthroplasty 10 months before the fall. Doc. 38, p. 4. Tapia canceled the procedure at the time of the pandemic. *Id*. The procedure was eventually performed on May 16, 2022, after the fall. *Id.*

1       On April 20, 2023, the plaintiffs filed suit in Pima County Superior Court.  Doc. 1-4, p.

2   1.  The action was removed to this court on October 10, 2023, when the defendants received

3   notice of the amount in controversy.  Doc. 1, pp. 1-2.

4       The plaintiffs claim that the fall resulted from "the defendants' collective negligent

5   maintenance of the Warehouse store means of egress."  Doc. 1-4, ¶ 7.  They further assert that

6   Costco is "subject to the International Building Code ("IBC") and the International Property

7   Maintenance Code ("IPMC") both of which have been adopted by the City of Tucson."  Doc.

8   1-4, ¶ 8.  They claim specifically that Costco violated section 1003.4 of the IBC and section

9   305.4 of the IPMC, which constitutes negligence per se.  Doc. 1-4, ¶ 9; *see Warfield v. City of*

10  *Tucson*, 2014 WL 580176, at *2, n. 1 (Ariz. Ct. App. Feb. 12, 2014) (unpublished) ("The 2003

11  IBC was adopted by the City of Tucson in 2004. Tucson, Ariz., Ordinance 10035 (Sept. 7,

12  2004); *see also* Tucson City Code, part II, ch. 6, art. III, § 6–34 (adopting the IBC).").

13      Section 1003.4 of the IBC states that "Walking surfaces of the *means of egress* shall have

14  a slip-resistant surface and be securely attached." (emphasis in original); Doc. 38, p. 2; Exhibit

15  7, Doc. 38-7, p. 1.  The term "slip-resistant" is not defined.  Doc. 38, p. 3.  The term "means of

16  egress" is defined as "[a] continuous and unobstructed path of vertical and horizontal egress

17  travel from any occupied portion of a building or structure to a *public way*."  Doc. 42-2, p. 14

18  (emphasis in original).

19      Section 305.4 of the IPMC states that "Every . . . walkway surface . . . shall be

20  maintained in sound condition and good repair."  Doc. 38, p. 3; Exhibit 8.

21      Costco filed the pending motion for summary judgment on October 22, 2024.  Doc. 37.

22  It argues that the plaintiffs' premises liability claim fails because they cannot establish notice

23  of a dangerous condition.  Doc. 37, p. 1.  It argues that the plaintiffs' negligence per se claim

24  fails because the building codes "fail to meet the requisite specificity."  *Id*.  Last, it argues the

25  damages claim for left Total Knee Arthroplasty should be dismissed for lack of causation.  Doc.

26  37, p. 2.

27

28

1    The plaintiffs filed a response and cross-motion for summary judgment on December 5,

2    2024.  Doc. 41.  They argue they are entitled to summary judgment on liability and damages.

3

4    <u>Summary Judgment</u>

5    Summary judgment is available only "if the movant shows that there is no genuine

6    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

7    R. Civ. P. 56(a).  There is a genuine dispute "if the evidence is such that a reasonable jury could

8    return a verdict for the non[-]moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

9    248, 106 S.Ct. 2505, 2510 (1986).

10   The initial burden rests on the moving party to point out the absence of any genuine issue

11   of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

12   "Where the moving party will have the burden of proof on an issue at trial, the movant must

13   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

14   party."  *Soremekun v. Thrifty Payless, Inc.*,  509 F.3d 978, 984 (9th Cir. 2007).  "Where the

15   non-moving party bears the burden of proof at trial, the moving party need only prove that there

16   is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp.*

17   *Securities Litigation*,  627 F.3d 376, 387 (9th Cir. 2010).

18   Once initially satisfied, the burden shifts to the non-movant to demonstrate through the

19   production of probative evidence that an issue of fact remains to be tried.  *Celotex Corp.,* 477

20   U.S. at 324, 106 S.Ct. at 2553.  "If a reasonable jury viewing the summary judgment record

21   could find by a preponderance of the evidence that [the non-movant is] entitled to a verdict in

22   [its] favor, then summary judgment [is] inappropriate; conversely, if a reasonable jury could not

23   find [for the non-movant], then summary judgment [is] correct."  *Cornwell v. Electra Cent.*

24   *Credit Union*, 439 F.3d 1018, 1027-28 (9th Cir. 2006).

25   "In judging evidence at the summary judgment stage, the court does not make credibility

26   determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*,  509 F.3d

27

28                                              - 4 -

978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable to the non[-]moving party."  *Id*.


### Notice of Dangerous Condition

Costco argues first that the plaintiffs cannot prove that it breached a duty of care because there is no evidence that Costco spilled the ice or had actual or constructive knowledge of the dangerous condition.  Doc. 37, p. 4.  (*citing Preuss v. Sambo's of Ariz., Inc*., 635 P.2d 1210, 1211 (Ariz. 1981)); *see* Doc. 1-4, ¶ 7 (claim for negligent maintenance).  It asserts that the ice was on the floor for only 19 seconds before Tapia fell.  Doc. 37, p. 4.

"To establish a [general] claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007) (en banc).  "The first element, whether a duty exists, is a matter of law for the court to decide."  *Id*.  "The other elements, including breach and causation, are factual issues usually decided by the jury."  *Id*.

In general, "the owner of a business . . . owes a duty to exercise reasonable care to his invitees."  *Walker v. Montgomery Ward & Co.*, 20 Ariz. App. 255, 258, 511 P.2d 699, 702 (1973).  That owner must exercise "the care required of him to keep [the premises] in a reasonably safe condition for his invitees. . . ."  *Id*.

Where the plaintiff alleges a dangerous condition that resulted in a slip and fall, proof of a breach of the standard of care necessarily requires proof that the defendant had some form of notice that the dangerous condition existed.  Doc. 37, p. 4.  "[T]he plaintiff must prove either, 1) that the foreign substance or dangerous condition is the result of defendant's acts or the acts of his servants, or 2) that defendant had actual knowledge or notice of the existence of the foreign substance or dangerous condition, or 3) that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action

1    to remedy it (i.e., constructive notice)." *Id.*  Costco maintains that there is no evidence that
2    Costco spilled the ice or had actual or constructive knowledge of the dangerous condition.  Doc.
3    37, p. 4.

4         In their response, the plaintiffs state simply that "Notice is not the issue" and proceed to
5    explain why they have proven negligence per se.  Doc. 41, p. 2.  Costco, in its reply/response,
6    asserts that the plaintiffs' statement is an acknowledgment that they cannot make out a prima
7    facie claim for general negligence.  Doc. 46, pp. 4-5.  In their reply, the plaintiffs do not address
8    Costco's assertion but state simply that "the Defendant is negligent per se . . . ." Doc. 48, p. 1.

9         The plaintiffs present no evidence that Costco caused the dangerous condition or had
10   notice of it.  There is no genuine dispute on the issue of notice, and Costco is entitled to
11   judgment as a matter of law on this claim as it appears in the Complaint.  *See* Doc. 1-4, ¶ 7 (The
12   fall resulted from "the defendants' collective negligent maintenance of the Warehouse store
13   means of egress.").

14

15        <u>Negligence Per Se</u>

16        Costco further argues it is entitled to summary judgment on the plaintiffs' claim that it
17   violated Section 1003.4 of the International Building Code and Section 305.4 of the
18   International Property Maintenance Code amounting to negligence per se.  Doc. 37, p. 5.
19   Specifically, Costco asserts that a violation of these codes cannot form the basis of a negligence
20   per se claim in Arizona because these codes establish a "general standard of care" and not a
21   "*specific* legal requirement."  *Id.*  (emphasis in original).

22        "Negligence per se describes those instances where certain acts or omissions constitute
23   negligence  without  further  inquiry  into  the  circumstances  or  reasonableness  of  their
24   occurrence."  *Ibarra v. Gastelum*, 249 Ariz. 493, 495, 471 P.3d 1028, 1030 (Ct. App. 2020)
25   (punctuation modified).  "Negligence per se is limited to situations involving a violation of a
26   specific legal requirement, not a general standard of care."  *Id.*  "To provide the basis for a
27   negligence per se claim, a statute must proscribe certain or specific acts."  *Id.*  "Therefore, if a

28                                          - 6 -

statute defines only a general standard of care [,] negligence *per se* is inappropriate." *Id*. at 495-496, 1030-1031.  For example, a statute that prohibits vehicular movements "if they cannot be made with reasonable safety" only establishes "a general standard of care" and "not the specificity required for a negligence per se instruction."  *Id*. at 596, 1031 (punctuation modified).  But a rule that states "that it is unlawful for a driver to fail to obey a regulatory sign or signal" would support a claim for negligence per se.  *Id*.

Section 305.4 of the International Property Maintenance Code ("IPMC"), states that "[e]very . . . walkway surface . . . shall be maintained in sound condition and good repair." Doc. 38, p. 3; Exhibit 8.  This code section only establishes a general standard of care and cannot support a claim for negligence per se.  On the other hand, Section 1003.4 of the  International Building Code ("IBC") states that "[w]alking surfaces of the *means of egress* shall have a slip-resistant surface and be securely attached." Doc. 38-7, p. 1 (emphasis in original).  This section can support a claim for negligence per se because it establishes a specific legal requirement. Doc. 38, p. 2; Exhibit 7.  The term "means of egress" is defined as "[a] continuous and unobstructed path of vertical and horizontal egress travel from any occupied portion of a building or structure to a *public way*." Doc. 42-2, p. 14 (emphasis in original).

Costco observes that the term "slip-resistant" is not defined in Section 1003.4 of the IBC and argues that this code section cannot support a claim for negligence per se because it lacks "reasonable specificity." Doc. 37, p. 6.  The court does not agree.  It is enough that the code gives Costco a specific legal requirement, which it does: The means of egress must have a "slip-resistant" surface.  IBC, Section 1003.4.  The term "slip-resistant" need not be defined in the code. *See, e.g., Mast v. Standard Oil Co. of California*, 140 Ariz. 1, 3-5, 680 P.2d 137, 139-141 (1984) (Negligence per se could be found if the alleged tortfeasor failed to odorize the LP gas as required by regulation in a way that would "indicate positively, by a distinctive odor" the presence of a dangerous concentration of leaking gas, where the term "distinctive" was not defined and would be decided by the trier of fact.).

1    In their cross-motion for summary judgment, the plaintiffs argue that summary judgment

2    on the issue of negligence per se must be granted in their favor because their expert testified that

3    the floor is not slip-resistant and Costco did not provide expert testimony to the contrary. Doc.

4    41, pp. 2-4. The court does not agree. The plaintiffs' expert testified that the term "slip-

5    resistant" is not defined in the IBC and should be interpreted in light of "the common usage of

6    what is slip-resistant." Doc. 37, pp. 5-6. If the term "slip-resistant" is to be interpreted

7    according to common understanding, an expert opinion is not necessary to counter an assertion

8    that the floor was not "slip-resistant."

9    Apparently, the floor in front of the ice machine has "black abrasive strips" attached.

10   Doc. 42-2, p. 1; Doc. 41, p. 3. The plaintiffs' expert, however, opined that the floor was not

11   "slip-resistant" in part because Costco keeps Universal Absorbent Socks and a movable wet

12   floor sign in the space between the ice machines. Doc. 42-2, p. 3. The expert conceded that he

13   did not test the co-efficient of friction of the flooring. Doc. 37, p. 6. He further opined that the

14   slip resistance of the floor can only be determined when the floor is wet, but he did not test the

15   floors in a wet condition. Doc. 37, p. 6. The court concludes that there remains a genuine issue

16   of material fact as to whether the floor was "slip-resistant." *See Johnson v. Costco Wholesale

17   Corp.*, 827 F. App'x 637, 639 (9th Cir. 2020) (Plaintiff did not need to provide expert testimony

18   to avoid summary judgment where the jury could decide for itself questions such as whether

19   "safety required a higher guardrail to keep tall objects from falling off" the checkout counter

20   conveyer belt.). The court expresses no opinion as to whether the floor in front of the ice

21   machine is a "[w]alking surface[] of the means of egress." Doc. 38-7, p. 1, IBC, Section 1003.4.

22   The court expresses no opinion as to whether the condition of the floor in front of the ice

23   machine caused the fall.

24   In the alternative, the plaintiffs assert that summary judgment must be granted in their

25   favor because their expert testified that the *placement* of the ice machine violated IBC code

26   sections. Doc. 41, pp. 2-4. Costco, on the other hand, argues that the plaintiffs' expert's

27   opinion concerning the location of the ice machine is a "red herring." Doc. 46, p. 7. It asserts

28

that no regulation "specifies the location of an ice machine" so "the location of the ice machine cannot form the basis of a negligence per se claim . . ." *Id.*

The court observes that the plaintiffs' Complaint does not assert a claim that the *location* of the ice machine by itself constitutes negligence, per se or otherwise. *See* Doc. 1-4, p. 3. For that reason alone, the court cannot grant summary judgment to the plaintiffs on this issue. *See Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 687 (D. Haw. 2017) ("The Court cannot address claims not pled in the complaint on a summary judgment motion.").

In the alternative, the court finds that even if the placement of the ice machine violated the terms[1] of the IBC, the plaintiffs have provided no evidence establishing that the placement of the ice machine was the proximate cause of the fall. *See below*. Accordingly, the plaintiffs are not entitled to summary judgment on this issue. *See Rosales v. Rollag*, 2024 WL 4333698, at *9 (D. Ariz. Sept. 27, 2024) ("Under Arizona law, the proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred.").

Causation

Costco further argues that it is entitled to summary judgment on the negligence per se claims because the plaintiffs cannot prove causation. Doc. 37, p. 6. Specifically, it maintains that the plaintiffs' expert did not opine as to what caused Tapia to fall and the plaintiffs must prove "there is a causal relationship between the violation and the claimed injury." Doc. 37,

---

[1] In their reply, the plaintiffs suggest that the placement of the ice machine runs afoul of Section (A) 101.3 of the IBC. Doc. 48, p. 2. This section reads as follows: "The purpose of this code is to establish the minimum requirements to safeguard the public health, safety and general welfare through structural strength, *means of egress* facilities, stability, sanitation, adequate light and ventilation, energy conservation, and safety to life and property from fire and other hazards attributed to the built environment and to provide safety to fire fighters and emergency responders during emergency operations." IBC, Section [A] 101.3 Intent. This section does not establish a specific legal requirement and cannot support a claim of negligence per se.

1    p. 6.  (*citing Beaty v. Jenkins*, 414 P.2d 763, 764 (Ariz. 1966)); *see also* Doc. 37, p. 6

2    ("Plaintiff's expert also admitted that customers can fall in stores that have nothing to do with

3    the slip resistance or type of flooring used.").

4            The court agrees that a plaintiff claiming negligence per se still must prove causation.

5    *See Rosales v. Rollag*, 2024 WL 4333698, at *9 (D. Ariz. Sept. 27, 2024).  "Indeed, to establish

6    fault, a plaintiff must prove that the defendant's negligence proximately caused the plaintiff's

7    injury."  *Id*. (punctuation modified).  "Under Arizona law, the proximate cause of an injury is

8    that which, in a natural and continuous sequence, unbroken by any efficient intervening cause,

9    produces an injury, and without which the injury would not have occurred."  *Id*.  "A plaintiff

10   proves proximate cause by demonstrating a natural and continuous sequence of events

11   stemming from the defendant's act or omission, unbroken by any efficient intervening cause,

12   that produces an injury, in whole or in part, and without which the injury would not have

13   occurred."  *Id*.  "Proximate cause is usually a factual decision that should be decided at trial."

14   *Id*. (punctuation modified).

15           The court agrees with Costco that the plaintiffs do not have expert testimony on the issue

16   of causation.  However, the court does not agree that causation must be proven by means of

17   expert testimony, at least where the plaintiff claims she fell because the floor was not "slip-

18   resistant" as required by code and the term "slip-resistant" is to be interpreted according to

19   common understanding.  *See Rosales v. Rollag*, 2024 WL 4333698, at *9 (D. Ariz. Sept. 27,

20   2024) ("Proximate cause is usually a factual decision that should be decided at trial.")

21   (punctuation modified); *see, e.g.*, *Mitchell v. Geo Grp. Inc.*, 2022 WL 874287, at *10, *1 (D.

22   Ariz. Mar. 24, 2022)  ("Defendant has not cited, and the Court is unaware of, any Arizona case

23   holding that expert testimony is always required to prove causation in a routine negligence case

24   such as this one" where the plaintiff alleged that he twisted his back when he slipped on a wet

25   floor.).  The plaintiffs' failure to present expert testimony on the issue of causation does not

26   entitle Costco to summary judgment.

27

28

1

2      Damages

3      After the fall, Tapia underwent a Total Knee Arthroplasty ("TKA").  Costco argues that the plaintiffs cannot prove that the fall caused her alleged damages.

4      "Recovery in a tort action is limited to those damages which are the direct and proximate

5      consequence of the defendant's wrongful acts." *Valley Nat. Bank v. Brown*, 110 Ariz. 260, 264,

6      517 P.2d 1256, 1260 (1974).

7      In this case, Costco argues that the plaintiffs cannot prove that the Total Knee

8      Arthroplasty ("TKA") was a direct and proximate consequence of Costco's alleged negligence.

9      First, they maintain that the plaintiffs have provided "no expert to causally relate her total knee

10     arthroplasty to her fall in Costco." Doc 37, p. 7.  Moreover, they observe, the medical records

11     that do exist show that Tapia's "orthopaedic surgeon actually recommended and scheduled the

12     Plaintiff for a total knee arthroplasty 10 months <u>before</u> her slip and fall at Costco" on November

13     12, 2021. Doc. 37, p. 8 (emphasis in original).  Costco asserts that Tapia canceled the scheduled

14     surgery due to the pandemic and implies that she would have had the surgery eventually even

15     if she had not suffered the fall.  *Id*.  Tapia eventually had the surgery on May 16, 2022, "nearly

16     six months *after* her fall."  *Id*.; Doc. 46, p. 8.  (emphasis in original).

17     The plaintiffs, on the other hand, assert that Tapia's knee surgery "had been postponed

18     indefinitely due to improvement through use of the knee brace."  Doc. 41; *see also* Tapia

19     Affidavit, Doc. 42-6.  The plaintiffs argue that she would not have had the TKA but for the fall.

20     The medical record indicates that Tapia was "hesitant to proceed with surgery due to the

21     ongoing pandemic" and wanted to "try bracing in the meantime."  Doc. 42-8, p. 1.  The record

22     notes that she "[w]ill call when she is ready to schedule surgery."  *Id*.  Tapia was given a "[l]eft

23     knee off loader medial brace."  Doc. 42-8, p. 4.  She reported that "the brace feels like a good

24     fit, and has improvement in pain/stability."  Doc. 42-8, p. 5.

25

26

27

28

1    The fall, however, resulted in a fracture of the fibula[2], a leg bone below the knee.  42-11,

2    p. 1.  Tapia maintains that this fracture resulted in a change in her gait, which caused her left

3    knee condition to worsen.  Doc. 42-6, pp. 3-4.  Had it not been for the fall, she states, she

4    "would have continued to defer surgery into the indefinite future until the knee became painful

5    again."  Doc. 42-6, p. 4.  The court concludes that there remains a genuine issue of material fact

6    as to whether the Total Knee Arthroplasty ("TKA") was a direct and proximate consequence

7    of Costco's alleged negligence.  Summary judgment on the issue should be denied.

8        Costco asserts that Tapia's affidavit cannot be considered under the "sham affidavit"

9    rule.  Doc. 46, p. 9 (citing *Van Asdale v. Int'l Game Tech*, 577 F.3d 989 (9th Cir. 2009) for the

10   proposition that "a party cannot create an issue of material fact by an affidavit contradicting

11   prior deposition testimony.").

12       Costco directs the court to a portion of Tapia's deposition:

13   Q: You had told us that you were aware you needed to have surgery on your left knee
     prior to the fall at Costco; correct?
14
     A: That is correct.
15       . . .

16   Q: It was your plan once the pandemic was over to go ahead and have that surgery on
     your left knee: correct?
17
     A: Yes on the left knee.  But because it didn't hurt so much then, I told the doctor that
18   I was going to hold off a little bit more.

19   Doc. 46, p. 9 (*citing* Doc. 38-1 at pp. 39:8-40:18).  Costco maintains that Tapia's affidavit

20   contradicts this portion of the deposition because, in the affidavit, she stated that she "had no

21   plans to have my left knee operated on . . . ."  Doc. 46, p. 9.  It argues that the affidavit cannot

22   be considered to the extent it contradicts her deposition.

23       "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an

24   affidavit contradicting [her] prior deposition testimony."  *Van Asdale v. Int'l Game Tech.*, 577

25

26       [2]  Tapia states in her affidavit that she fractured her *tibia*.  Doc. 42-6, ¶¶ 4, 12.  The
     medical record, which she presented to the court in support of her affidavit, is to the contrary.
27   Doc. 42-11, p. 1.

28                                    - 12 -

1    F.3d 989, 998 (9th Cir. 2009).  Nevertheless, there are "two important limitations on a district

2    court's discretion to invoke the sham affidavit rule." *Id*. "First, the rule does not automatically

3    dispose of every case in which a contradictory affidavit is introduced to explain portions of

4    earlier deposition testimony; rather, the district court must make a factual determination that the

5    contradiction was actually a 'sham.' " *Id*. (punctuation modified).  "Second, our cases have

6    emphasized that the inconsistency between a party's deposition testimony and subsequent

7    affidavit must be clear and unambiguous to justify striking the affidavit."  *Id*. at 998-999.

8    "Thus, the non-moving party is not precluded from elaborating upon, explaining or clarifying

9    prior testimony elicited by opposing counsel on deposition, and minor inconsistencies that result

10    from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for

11    excluding an opposition affidavit."  *Id*. at 999.

12         The court concludes that Tapia's affidavit is not a "sham," and read as a whole, does not

13    materially contradict her deposition testimony.  Both the affidavit and the deposition testimony

14    indicate that Tapia was planning to have the knee surgery after the pandemic if her symptoms

15    did not improve, but if they did improve, she was going to wait and see.

16

17         <u>RECOMMENDATION</u>

18         The Magistrate Judge recommends that the District Court, after its independent review

19    of the record, enter an order GRANTING in part Costco's motion for summary judgment (Doc.

20    37) and DENYING the plaintiffs' motion for summary judgment (Doc. 41).   Summary

21    judgment should be granted to Costco on the plaintiffs' general negligence claim as it appears

22    in the Complaint. *See* Doc. 1-4, ¶ 7 (The fall resulted from "the defendants' collective negligent

23    maintenance of the Warehouse store means of egress.").  Summary judgment should be granted

24    to Costco on the plaintiffs' negligence per se claim based on Section 305.4 of the International

25    Property Maintenance Code ("IPMC").  Summary judgment should be denied on the plaintiffs'

26    negligence per se claim based on Section 1003.4 of the  International Building Code ("IBC").

27

28                                              - 13 -

Summary judgment should be denied on the plaintiffs' claim that the fall caused Tapia's Total Knee Arthroplasty ("TKA").

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation.   If objections are not timely filed, the party's right to de novo review may be waived.  The Local Rules permit the filing of a response to an objection.  They do not permit the filing of a reply to a response without the permission of the District Court.

DATED this 9th day of April, 2025.

Honorable Michael A. Ambri
United States Magistrate Judge

- 14 -